Stuart R. Fraenkel (State Bar No. 173991)
Carlos F. Llinás Negret (State Bar No. 284746)
**NELSON & FRAENKEL LLP**
601 South Figueroa Street
Los Angeles, CA 90017
Tel.: 213-622-6469
Fax: 213-622-6019
Email: stuart@nflawfirm.com
Email: cllinas@nflawfirm.com

*Attorneys for Plaintiff Richard Macias*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MACIAS, individually, | CASE NO.: |
| Plaintiff, | **PLAINTIFF RICHARD MACIAS COMPLAINT FOR DAMAGES** |
| vs. | **JURY TRIAL DEMANDED** |
| CITY OF LOS ANGELES, LOS ANGELES HARBOR DEPARTMENT, a/k/a PORT OF LOS ANGELES, and DOES 1 – 10. | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD MACIAS, an individual ("Plaintiff"), by and through his undersigned attorneys, files his Complaint against CITY OF LOS ANGELES, LOS ANGELES HARBOR DEPARTMENT, a/k/a PORT OF LOS ANGELES, DOES 1-10 ("Defendants"), and alleges as follows:

## INTRODUCTION

1. This action arises from continuous workplace injuries connected to Plaintiff's employment as a seaman for Defendant CITY OF LOS ANGELES, LOS ANGELES HARBOR DEPARTMENT, a/k/a PORT OF LOS ANGELES.

2. The Jones Act, 46 U.S.C. §30104, a federal statute, provides seamen a remedy against employers resulting from injury in the course of employment.

3. Federal maritime law considers seamen to be wards of the Admiralty Court, placing them in a unique position to have their rights protected in the same way the rights of minors are defended and upheld. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 (1942); *Bass v. Phoenix Seaddrill/78, Ltd.*, 749 F.2d 1154, 1161 (5th Cir. 1985) ("Seamen, of course, are wards of admiralty whose rights federal courts are duty-bound to jealously protect.")

## THE PARTIES

4. Plaintiff is a citizen of the United States and a resident of the State of California.

5. Defendant CITY OF LOS ANGELES is a public entity organized and existing under the laws of the State of California.

6. Defendant LOS ANGELES HARBOR DEPARTMENT, a/k/a PORT OF LOS ANGELES, is a department of the CITY OF LOS ANGELES, and is governed by the Los Angeles Board of Harbor Commissioners.

7. Defendant CITY OF LOS ANGELES (and its departments) is a municipal corporation and not an 'arm of the state' of California. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-281 (1977); *Hess Port Authority v. Trans-Hudson Corporation*, 513 U.S. 30, 47 (1994).

8. At all times material, Defendants owned and/or operated and/or controlled and/or chartered and/or supervised the following vessels, on navigable waters, at the Port of Los Angeles, Wilmington, San Pedro: *BARGE 97/MORGAN BARGE*, *TUGBOAT NELSON*, *TUGBOAT YANKEE*, and *RC-67*.

9. At all times material, Defendants employed seafarers in the service of their vessels including Plaintiff.

10. Plaintiff does not know the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes that each of the Doe Defendants was in some manner legally responsible for the damages alleged below. Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when ascertained, along with appropriate charging allegations.

11. Plaintiff is informed and believes, and thereupon alleges, that each of Defendants designated herein as a Doe is responsible in some actionable manner for the events and happenings referred to herein, and caused injuries to Plaintiff, as hereinafter alleged, either through said Defendants' conduct, or through the conduct of their agents, servants, employees. The term "Defendant" or "Defendants" as used in this Complaint includes both the named Defendants and Defendants sued under the fictitious names of Does 1 through 10, inclusive.

12. Plaintiff is informed and believes and therefore alleges that, at all times relevant to this action, Defendants, and each of them, were the agents, servants, employees, assistants, and consultants of each of their co-Defendants, and were, as such, acting within the course of and scope of the authority of their agency and employment, and that each and every Defendant when acting as a principal, was negligent and careless in the selection and hiring of each and every co-Defendant as an agent, servant, employee, assistant and/or consultant.

## JURISDICTION

13. This Court has jurisdiction over Plaintiff's claims under the maritime and admiralty jurisdiction of the Court, pursuant to Article III, §2 of the United States Constitution, delegating jurisdiction over admiralty cases to the federal courts, and 28 U.S.C. §1333.

14. Federal admiralty jurisdiction extends to all navigable waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable. The term 'navigable waters' means a body of water which, in its present configuration, constitutes a highway of commerce, between the states or with foreign countries. See *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756 (9th Cir. 1986) ("To invoke federal admiralty jurisdiction in tort cases, the tort must occur on navigable waters and bear a significant relationship to traditional maritime activity.")

15. This Court also has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §1331. In particular, Plaintiff brought this action pursuant to 46 U.S.C. §30104, Personal Injury to or Death of Seamen (hereinafter "Jones Act."). Section 30104 of the Jones Act provides "A seaman injured in the course of employment, or if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."

## GENERAL ALLEGATIONS

16. On or about July 5 and 6, 2018, Plaintiff sustained severe injuries to his right shoulder, right arm, right hand and chest, while in the course of his employment.

17. At the time of the injury, Plaintiff was employed as a 'Pile Driver Worker I,' operating equipment on a barge, for the CITY OF LOS ANGELES HARBOR DEPARTMENT, on navigable waters.

18. Plaintiff worked continuously in that position from the time he was hired on or about August 13, 2001, through on or about July 6, 2018.

19. During this period, Plaintiff worked on various CITY OF LOS ANGELES' vessels, including *BARGE 97/MORGAN BARGE*, *TUGBOAT NELSON*, *TUGBOAT YANKEE*, and RC-67.

20. As a 'Pile Driver,' Plaintiff's job duties included a variety of specialized tasks in connection with the maintenance, repair, and operation of pile driver equipment on water. His duties included: heavy marine construction, using chainsaws, pneumatic drills, large roto-hammers, jackhammers, electric tools (saws, drills, etc.), cutting and removing large timbers, including piling and installing new piling, cleaning or installing metal ladders, and removing an installing life ring boxes.

21. While on board *BARGE 97/MORGAN BARGE* Plaintiff was responsible for a variety of specialized manual tasks in connection with the maintenance, repair, and operation of pile driver equipment on water. The work was performed from a floating barge, including using heavy pneumatic, hydraulic, diesel, and mechanical equipment over water. At all times material, Plaintiff was the operator and master of the *BARGE 97/MORGAN BARGE*, tasked with its navigation.

22. While on duty onboard *BARGE 97/MORGAN BARGE*, Plaintiff also performed tasks on *TUGBOAT NELSON* and *TUGBOAT YANKEE*, whenever these tugboats were tasked with towing *BARGE 97/MORGAN BARGE*.

23. On or about July 5, 2018, and July 6, 2018, Plaintiff was assigned to use a commercial 35 lbs Ingersoll Rand Drive Impact Wrench and a 16 lbs pneumatic drill to drill numerous holes in the pier for two consecutive days, on board *BARGE 97/MORGAN BARGE*.

24. The pier wood is very hard wood soaked in cretosote (a wood preservative that makes hard wood even harder).

25. Plaintiff worked 9 hours on the first day (July 5, 2018), and 8 hours on the second day (July 6, 2018), for a total of approximately 17 hours doing this arduous task.

26. The activity required him to lift the commercial drill above head with the base of the drill pressing against the chest and pushing upward to drill the

numerous holes with use of the upper extremities, putting stress on the shoulder and cervical spine.

27.     Plaintiff was also tasked on July 5, 2018, and July 6, 2018, to work on double-duty covering for 3 absent crewmembers as a deck hand for a City-owned tugboat charged with towing *BARGE 97/MORGAN BARGE*. Upon information and belief, on July 5, 2018, and July 6, 2018, the City-owned tugboat Plaintiff worked on was either the *TUGBOAT NELSON* or *TUGBOAT YANKEE*.

28.     Plaintiff's work on *TUGBOAT NELSON* and/or *TUGBOAT YANKEE* included, but was not limited to handling, securing and tying the lines from the barge to the piles to carry out drilling from one job site to the next. This type of additional work is normally performed by 3 crewmembers, who were absent on July 5, 2018, and July 6, 2018 (presumably on vacation), forcing the Plaintiff to do the work of 4 full-time employees. The additional tasks further contributed to his exhaustion and aggravated his injuries.

29.     Thereafter, the Plaintiff left work for approximately one week to obtain medical care. At the end of that week, the Plaintiff returned to work.

30.     Over the next several weeks, the Plaintiff was experiencing daily and excruciating pain. Despite pleading with his employer to deem his injuries work-related, to allow him to take leave, the Defendant rejected his request, forcing the Plaintiff to work for several weeks on a full-time basis, further aggravating his injuries.

31.     Defendant did not allow Plaintiff to stop working until approximately September, 2018. The Plaintiff has remained on disability and out of work ever since.

32.     As a direct and proximate result of the injuries, in addition to rounds of physical therapy and subacromial injections to treat pain, Plaintiff received surgery on his neck on or about January 3, 2019, consisting of an anterior cervical discectomy/fusion from the right side and decompression of the cervical cord.

Plaintiff also received arthroscopic surgery on his right shoulder on or about March 12, 2020.

33. For the cervical spine, Plaintiff has experienced, and continues to experience, constant and sharp pain with radiation to his right shoulder blade and his right hand. The pain is exacerbated by pushing, pulling and gripping. The pain starts on the right side of his neck and radiates into the right upper extremity down the radial aspect of the right distal forearm, and terminating with pain involving the thumb, index, middle and ring fingers. The numbness and tingling sensation are permanent, regardless of activity level. Plaintiff also has limited range of movement on the neck, impairing his ability to do everyday activities such as driving.

34. For the right shoulder, Plaintiff has experienced, and continues to experience constant dull pain. The pain is exacerbated by pushing, pulling and gripping. Even mundane tasks at home can trigger severe and debilitating pain.

35. For the right wrist/hand, the Plaintiff experienced and continues to experience constant pain, with feelings of numbness, tingling sensations and weakness.

36. For the right elbow, Plaintiff frequently experiences what feels like a shock of electricity on the muscle above the right elbow.

37. Plaintiff's stamina and physical condition have significantly deteriorated since the time of the incident, affecting his ability to stand, bend, and twist for extended periods of time, thereby preventing him from performing the complex movements necessary to carry out his job as a Pile Driver for extended periods of time, including using pneumatic drills and pneumatic impacts.

38. For example, the job requires constant and synchronized movements of the pneumatic drill, utilizing different muscle groups and extremities which are now severely impaired as a result of the injuries sustained in this case. The job also requires the operation of pneumatic impacts which require constant lifting and bending, which Plaintiff is now unable to do for extended periods of time.

39. Plaintiff also experiences mental suffering and anxiety from the loss of independence and the effects his injuries have on his activities of daily living. Prior to the incident, Plaintiff enjoyed outdoor activities and exercise including swimming in the ocean (several hours at a time), hiking and camping (for several days at a time), fishing (throwing a fishing line), and playing sports and baseball with his grandchildren.

40. This mental suffering is aggravated by the fact that at age 55, Plaintiff's disabilities have forced him to abandon the career he devoted 30 years of his working life to. The Plaintiff also experiences mental suffering and anxiety for losing the right to full retirement benefits, which he would have been eligible to receive, but for the incident.

41. On or about July 24, 2018, approximately 19 days after the incident:

a. Plaintiff notified Defendants of the incident and filed an administrative claim for workers' compensation ("Workers' Compensation Claim Form") and an "Employees Report of Injury Form," directly with the CITY OF LOS ANGELES. The claim included information about the Plaintiff's injuries to his "right shoulder, chest, right arm, spasms, right hand, numbness/tingling;"

b. Eyewitness George Holguin submitted a formal 'Accident Witness Statement' noting the date of incident as 7-5-2018, with the following description "Mr. Macias was drilling and countersinking through the Bull Rail on a work bench that was on Barge #97;"

42. Plaintiff's workers' compensation claim has been pending ever since.

43. At the CITY OF LOS ANGELES' request, Plaintiff was examined by an independent medical examiner on or about 9/10/2018, 10/22/2018, 3/11/2019, 4/18/2019, 5/26/2019, 8/10/2019, 10/21/2019, 12/2/2019, 1/20/2020, 2/24/2020, and 3/9/2020. The CITY OF LOS ANGELES relied on these examinations to evaluate and investigate the Plaintiff's incident and injuries.

44. In *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 91 (1991), the Supreme Court held that the receipt of voluntary worker's compensation payments under a federal worker's compensation statute does not bar a subsequent action under the Jones Act.

## FIRST CAUSE OF ACTION
## JONES ACT NEGLIGENCE
## AGAINST ALL DEFENDANTS

45. Plaintiff re-alleges, adopts, and incorporates by reference the allegations in the foregoing paragraphs as though alleged originally herein.

46. On or about July 5, 2018, and July 6, 2018, Plaintiff was employed by Defendants as a seaman and as a member of the crew on *BARGE 97/MORGAN BARGE*, *TUGBOAT NELSON* and *TUGBOAT YANKEE*.

47. The vessels were in navigable waters.

48. It was the duty of Defendants to provide Plaintiff with a reasonably safe place to work.

49. On or about the above referenced date, Plaintiff was injured while aboard the vessels, sustaining severe and permanent injuries.

50. Plaintiff's resulting injuries are due to the fault and negligence of Defendants, and/or its agents, servants, and/or employees in the following manner:

    a. Failing to use reasonable care to provide Plaintiff a reasonably safe place to work;

    b. Failing to promulgate and enforce reasonable rules and regulations designed to ensure the reasonable safety and health of Plaintiff, while engaged in the course of his employment on the vessels;

    c. Failure to use reasonable care to provide and maintain proper and adequate, crew and equipment in the areas of the vessels wherein the Plaintiff was assigned to work;

d. Failing to take feasible and reasonable steps to eliminate dangerous conditions which were known by the Defendants and which, in the exercise of reasonable care, should have been known by the Defendants;

e. Failing to provide Plaintiff and other crew members who were associated with Plaintiff or Plaintiff's incident giving rise to this action, reasonable work and rest hours of employment so as not to overwork them to the point of not being physically fit to carry out their duties and cause them to overwork to the point of fatigue;

f. Failing to follow sound management practices with the goal of providing Plaintiff a reasonably safe place to work;

g. Requiring Plaintiff to repeatedly lift heavy items and drill in succession without giving him adequate rest periods in between;

h. Failing to provide Plaintiff with proper training and supervision with respect to heavy repetitive lifting and drilling;

i. Requiring Plaintiff to carry out tasks unassisted and without sufficient support;

j. Requiring Plaintiff to carry out tasks typically performed by other crew members, in addition to tasks assigned to him;

k. Failing to provide adequate manpower to the Plaintiff's department to enable the Plaintiff to perform his assigned work duties at a reasonably safe pace, with reasonably safe lifting leads, and with adequate rest periods for the amount of lifting and drilling involved;

l. Failing to keep and maintain the subject area in a reasonably safe condition;

m. Failing to inspect the subject area;

      n.    Creating dangerous conditions and/or failing to remedy dangerous conditions which were known by the Defendants and which in the exercise of reasonable care should have been known by the Defendants;

      o.    Negligently designing and/or approving dangerous conditions;

      p.    Requiring Plaintiff to continue working after reporting the subject incident, further aggravating his injuries;

      q.    Plaintiff's worksite lacked the site safety precautions available to comparable workers in comparable land-based jobs;

      r.    Prior to Plaintiff's incident Defendants failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate those hazards, minimize those hazards or to adequately warn the Plaintiff of the danger those hazards posed to him and give him the ability to avoid them;

All of which caused Plaintiff severe and permanent injuries.

51. The negligence of the Defendants as described in the foregoing paragraph caused Plaintiff to suffer severe and permanent injuries.

52. At all times material hereto, Defendants negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn the Plaintiff of the hazard. In addition, Defendants violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual and/or to follow it on board the vessels on which the Plaintiff served. All of the above caused the Plaintiff to be injured.

53. Defendants knew of the foregoing conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

54. As a result of the negligence of Defendants, the Plaintiff was injured, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job.

## SECOND CAUSE OF ACTION
## UNSEAWORTHINESS
## AGAINST ALL DEFENDANTS

55. Plaintiff re-alleges, adopts, and incorporates by reference the allegations in the foregoing paragraphs as though alleged originally herein.

56. On or about the previously stated dates, Plaintiff was a seaman and a member of the crew of Defendant's vessels *BARGE 97/MORGAN BARGE*, *TUGBOAT NELSON* and *TUGBOAT YANKEE*, which were in navigable waters.

57. At all times material hereto, the vessels were owned, managed, operated and/or controlled by the Defendants.

58. Defendants had the absolute non-delegable duty to provide Plaintiff with seaworthy vessels on the vessels on which he served.

59. At all times material, Defendants were and continue to be strictly liable to the Plaintiff due to unseaworthy conditions on the vessels.

60. On or about the previously stated dates, the unseaworthiness of Defendants' vessels were a legal cause of injury and damage to the Plaintiff by reason of the following:

a. Failing to use reasonable care to provide Plaintiff a reasonably safe place to work;

b. Failing to promulgate and enforce reasonable rules and regulations designed to ensure the reasonable safety and health of Plaintiff, while engaged in the course of his employment on the vessels;

c. Failure to use reasonable care to provide and maintain proper and adequate, crew and equipment in the area of the vessels wherein the Plaintiff was assigned to work;

d. Failing to take feasible and reasonable steps to eliminate dangerous conditions which were known by the Defendants and which, in the exercise of reasonable care, should have been known by the Defendants;

e. Failing to provide Plaintiff and other crew members who were associated with Plaintiff or Plaintiff's incident giving rise to this action, reasonable work and rest hours of employment so as not to overwork them to the point of not being physically fit to carry out their duties and cause them to overwork to the point of fatigue;

f. Failing to follow sound management practices with the goal of providing Plaintiff a reasonably safe place to work;

g. Requiring Plaintiff to repeatedly lift heavy items and drill in succession without giving him adequate rest periods in between;

h. Failing to provide Plaintiff with proper training and supervision with respect to heavy repetitive lifting and drilling;

i. Requiring Plaintiff to carry out tasks unassisted and without sufficient support;

j. Requiring Plaintiff to carry out tasks typically performed by other crew members, in addition to tasks assigned to him;

k. Failing to provide adequate manpower to the Plaintiff's department to enable the Plaintiff to perform his assigned work duties at a reasonably

      safe pace, with reasonably safe lifting leads, and with adequate rest periods for the amount of lifting and drilling involved;

l. Failing to keep and maintain the subject areas in a reasonably safe condition;

m. Failing to inspect the subject areas;

n. Creating dangerous conditions and/or failing to remedy dangerous conditions which were known by the Defendants and which in the exercise of reasonable care should have been known by the Defendants;

o. Negligently designing and/or approving dangerous conditions;

p. Requiring Plaintiff to continue working after reporting the subject incident, further aggravating his injuries;

q. Plaintiff's worksite lacked the site safety precautions available to comparable workers in comparable land-based jobs;

r. Prior to Plaintiff's incident Defendants failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate those hazards, minimize those hazards or to adequately warn the Plaintiff of the danger those hazards posed to him and give him the ability to avoid them;

All of which caused Plaintiff severe and permanent injuries.

61. As a result of the unseaworthiness of the vessels, the Plaintiff was injured in Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the

future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job.

### THIRD CAUSE OF ACTION
### FAILURE TO PROVIDE MAINTENAINCE AND CURE
### AGAINST ALL DEFENDANTS

62. Plaintiff re-alleges, adopts, and incorporates by reference the allegations in the foregoing paragraphs as though alleged originally herein.

63. On or about the previously stated dates, Plaintiff, while in the service of Defendants' vessels as a crewmember was injured.

64. Under the General Maritime Law, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendants, until Plaintiff is declared to have reached maximum possible cure, also referred to as maximum medical improvement ("MMI"). This includes unearned wages (regular wages, overtime, vacation pay, sick pay), which were reasonably anticipated to the end of the contract or voyage whichever is longer.

65. Defendants willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and refused to provide the Plaintiff the level of cure that the Plaintiff needs so that Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee.

66. An MMI declaration must be unequivocal, and if not, any doubts or controversy regarding whether or not the seaman is at MMI must be resolved in favor of the seaman.

67. A seaman-plaintiff seeking maintenance "is entitled to the reasonable cost of food and lodging, provided he has incurred the expense." *Hall v. Noble Drilling (U.S.) Inc.* (5th Cir. 2001) 242 F.3d 582, 587. The plaintiff's actual expenses are presumptively reasonable, subject to an adjustment upwards or downwards if the court determines that the actual costs were more or less than an

objectively reasonable amount. (Id. at 590.). Plaintiffs' monthly out-of-pocket expenses include costs of housing, utilities, groceries, and transportation.

68. On August 20, 2020, Defendants sent Plaintiff a letter notifying him that after September 4, 2020, "*Temporary disability (TD) [payments] are ending because [he] reached the statutory limit of 104 compensable weeks within a period of two calendar years beginning on the date of initial payment, 9/7/2019; pursuant to Labor Code §4656(c)(1).*" The letter also outlines that from September 7, 2019, through September 4, 2020, Plaintiff received $1,149.46 per week (or $164.20 per day).

69. Irrespective of their obligations under California law, Defendants also have duties as Jones Act employers under federal law. In particular, pursuant to the General Maritime Law of the United States, Defendants have a continuing duty to provide Plaintiff maintenance and cure until there has been an unequivocal declaration of MMI by Plaintiff's treating physicians.

70. To date, no such declaration of MMI has been made.

71. Under federal maritime law, a Jones Act employer is also strictly liable for a seaman's medical care. (57 Cal. Jur. 3d Ships and Shipping § 68, citing *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal. 4th 100.) The obligation to provide maintenance and cure continues until MMI has in fact been achieved. (*Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).) The medical treatment received by Plaintiff through September 2019 pertaining to the incident giving rise to this matter, appears to have been paid by the Defendants through Kaiser. During that period, Defendants paid for the Plaintiff's insurance premiums.

72. On or about September 2019, Defendants cancelled Plaintiff's medical insurance coverage through Kaiser. Plaintiff's medical insurance was cancelled without an unequivocal declaration of maximum medical improvement. From that point in time, Plaintiff has become responsible for his own medical care. He is

financially unable to pay insurance premiums, further aggravating his physical condition.

73. Further, Plaintiff received a bill from Defendants, dated August 21, 2020, seeking to recover $1,237.14 for "cost of bi-weekly insurance premiums." Charging a seaman for his own care, whether directly or via a deduction of other benefits constitutes an unlawful violation of the Plaintiffs' maintenance and cure obligations.

74. On September 1, 2020, September 11, 2020, and September 17, 2020, Plaintiff, through counsel, sent Defendants formal written demands for maintenance and cure. To date, Plaintiff continues to be deprived of maintenance and cure.

75. Defendants' failure to pay Plaintiff's maintenance and cure is willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's right as a seaman. As such, Plaintiff is entitled to attorney's fees and punitive damages under the General Maritime Law of the United States. Further, Defendants unreasonably failed to pay or provide Plaintiff with maintenance and cure which aggravated his condition and caused Plaintiff to suffer additional compensatory damages including but not limited to the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and into the future.

## FOURTH CAUSE OF ACTION
## WAGES AND PENALTIES
## PURSUANT TO THE SEAMAN'S WAGE ACT, 46 U.S. § 10313
## AGAINST ALL DEFENDANTS

76. Plaintiff re-alleges, adopts, and incorporates by reference the allegations in the foregoing paragraphs as though alleged originally herein.

77. Pursuant to the Seaman's Wage Act, the Master (employer) must pay each seaman promptly at the end of the voyage the balance of wages due within twenty-four hours after the cargo has been discharged or within four days after the seaman is discharged, whichever is earlier.

78. If payment is not made "without sufficient cause" the seaman must be paid "two days" wages for each day payment is delayed. (*Griffin v. Oceanic Contractors, Inc.*, (1982) 102 S.Ct. 3215 (there is no room for discretion when enforcing this penalty.)

79. At all relevant times, Defendants made unlawful deductions from Plaintiff's wages. These unlawful deductions include, but are not limited to, $1,237.14 for the "cost of bi-weekly insurance premiums."

80. Accordingly, Plaintiff is entitled to back pay for all unlawfully deducted amounts, plus penalties of "two days" wages for each day payment is delayed.

81. Defendants unlawful deductions are willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's right as a seaman.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For general and special damages according to proof;
2. For economic damages;
3. Exemplary damages and attorneys' fees for failing to provide and pay maintance and cure;
4. Penalty wages pursuant to 46 U.S. § 1031;
5. For prejudgment interest to the extent allowed by law;
6. For costs of suit incurred herein; and
7. For such other and further relief as the Court may deem proper.

Date: June 30, 2021.

NELSON & FRAENKEL, LLP

By *Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff Richard Macias*

## JURY TRIAL DEMAND/REQUEST

Plaintiff hereby requests and demands a trial by jury on all claims so triable.

Date: June 30, 2021.

NELSON & FRAENKEL, LLP

By *Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff Richard Macias*